IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERL D. MATHEWS     PLAINTIFF

v.     Civil No. 11-2018

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration     DEFENDANT

**MEMORANDUM OPINION**

I.     **Factual and Procedural Background**

Plaintiff, Sherl D. Mathews, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on February 27, 2008, alleging a disability onset date of November 21, 2007, due to diabetes mellitus, hypertension, back, knee, and neck pain with radiculopathy into her left arm, mood problems, chronic obstructive pulmonary disease ("COPD"), and depression. Tr. 46, 137. On the alleged onset date, Plaintiff was forty five years old with tenth grade education with some special education classes. Tr. 16, 48, 145, 335. She has past work as a hospital cleaner. Tr. 26-29, 48, 132-136, 139-140, 158-165.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 53-59, 62-65. At Plaintiff's request, an administrative hearing was held on May 27, 2009. Tr. 9-33. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on October 30, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 38-49.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 6, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff now seeks judicial review of that decision.

## II.   Medical History

### A. Joe Dunaway, D.O.

Joe Dunaway, D.O., treated Plaintiff for the following complaints: shortness of breath, chest pain, abdominal pain, depression, anxiety, neck, back, and left arm pain, headaches, body aches, bronchitis, and diabetes mellitus. Tr. 210-223. On February 19, 2007, Plaintiff complained of abdominal pain, vomiting with blood, and dark stools. Tr. 216, 296-310. An esophagogastroduodenoscopy ("EGD") revealed gastritis and duodenitis, with no evidence of bleeding. Tr. 298. Plaintiff was placed on Prilosec. Tr. 298.

At a follow-up appointment on March 1, 2007, Plaintiff complained of stomach pain, mood swings, anger, crying, and poor sleep. Tr. 215. Dr. Dunaway assessed Plaintiff with anxiety and depression, gastroesophageal reflux disease ("GERD"), non-insulin-dependent diabetes mellitus, and hypercholesterolemia. Tr. 215. He prescribed Lipitor, Glucotrol, Lexapro, Trazodone, Prevacid, and Robinul. Tr. 215.

On May 1, 2007, Plaintiff complained of chest, neck, back, and left arm pain. Tr. 214. On examination, Plaintiff's lungs were clear to auscultation and heart rhythm and rate were normal. Tr. 214. Plaintiff had decreased range of motion and tenderness in her left shoulder and neck. Tr. 214. Chest x-rays, dated April 29, 2007, revealed low lung volumes and mild left basilar atelectasis. Tr. 221, 310. Dr. Dunaway diagnosed Plaintiff with muscle spasms in her neck, shoulder pain/impingement, and uncontrolled non-insulin-dependent diabetes mellitus. Tr. 214. He

prescribed Robaxin and Mobic. Tr. 214.

On August 22, 2007, Plaintiff complained of headaches, body aches, and depression. Tr. 212. Dr. Dunaway prescribed Esgic and Baclofen, and instructed Plaintiff to continue Lexapro. Tr. 212. On November 1, 2007, Plaintiff complained of high blood sugar levels, but stated her mood had improved. Tr. 211. Laboratory testing revealed an HbA1c level of 11.9.[1] Tr. 218. Dr. Dunaway encouraged Plaintiff to eat properly and exercise. Tr. 211.

Chest x-rays dated December 17, 2007, were normal. T. 220. An electrocardiogram ("ECG") revealed a possible left atrial enlargement and a right ventricular conduction delay, possibly an old anterior infarct. Tr. 223.

On January 17, 2008, Plaintiff presented with complaints of rectal bleeding and occasional diarrhea. Tr. 308-309. A colonoscopy revealed internal hemorrhoids and proctitis with no bleeding. Tr. 309, 365. Dr. Dunaway instructed Plaintiff to increase her fiber intake. Tr. 309.

On June 13, 2008, Plaintiff complained of weakness, malaise, nausea/vomiting, and shoulder, neck, wrist, hand, and back pain. Tr. 364. Her medications included Amitriptyline, Glucotrol, Baclofen, Robinul, Zoloft, and Prevacid. Tr. 364. Dr. Dunaway diagnosed Plaintiff with Fibromyalgia and GERD. Tr. 364. He instructed Plaintiff to try Carafate liquid. Tr. 364.

In a Medical Source Statement ("MSS") dated June 13, 2008, Dr. Dunaway found that Plaintiff could occasionally lift/carry less than ten pounds and stand/walk for at least two hours in an eight-hour workday. Tr. 367-369. He determined Plaintiff must periodically alternate sitting and standing to relieve pain or discomfort. Tr. 368. He also determined Plaintiff was limited in her ability to push/pull with her lower extremities and reach, handle, finger, and feel. Tr. 368-369. Dr.

---

[1] Normal HbA1c levels range from 4.8-5.9. Tr. 218.

Dunaway found that Plaintiff could do no climbing, kneeling, crouching, or crawling, but could occasionally balance. Tr. 368. He determined that Plaintiff's exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards (machinery, heights), fumes, odors, chemicals, and gases should be limited. Tr. 369.

On August 26, 2008, Dr. Dunaway completed a second MSS, in which he found that Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, and stand/walk for at least two hours in an eight-hour workday. Tr. 417-419, 427-429. He determined Plaintiff must periodically alternate sitting and standing, and could sit and stand for a combined total of less than six hours in an eight-hour workday. Tr. 418, 428. Additionally, Dr. Dunaway found that Plaintiff was limited in both her upper and lower extremities and could never climb, balance, kneel, crouch, and crawl. Tr. 418. He found that Plaintiff's ability to reach, handle, finger, and feel was limited. Tr. 419. Environmentally, Dr. Dunaway determined that Plaintiff's exposure to dust, humidity/wetness, hazards (machinery, heights), fumes, odors, chemicals, and gases should be limited, but she could be exposed to unlimited noise and vibration. Tr. 419.

In April and May 2009, Plaintiff reported elevated blood sugar levels, right toe pain, and poor sleep. Tr. 420-421. Laboratory testing revealed a glucose mean of 276 mg/DL and an HbA1c level of 10.9. Tr. 423. Plaintiff's uric acid level was also elevated. Tr. 423. Dr. Dunaway diagnosed Plaintiff with insomnia, non-insulin-dependent diabetes mellitus, poorly controlled, gout, and irritated actinic keratoses. Tr. 421. He prescribed Byetta, Temazepam, Darvocet, and Allopurinol. Tr. 421. He also recommended cryotherapy to remove Plaintiff's skin lesions. Tr. 421. At that time, Plaintiff's medications included Glucotrol, Metformin, Flexeril, Amitriptyline, Lisinopril, Prevacid, Zoloft, Byetta, Temazepam, HCTZ, and Darvocet. Tr. 420.

B. <u>Johnson County Regional Hospital</u>

Plaintiff was treated at Johnson County Regional Hospital for the following complaints: headache, nausea/vomiting, diarrhea, abdominal pain, anxiety, chest pain, gastroenteritis, and neck, back, arm, and knee pain. Tr. 224-310, 371-395, 400-416.

On January 23, 2008, Plaintiff complained of neck pain following a motor vehicle accident. Tr. 249-254. X-rays of Plaintiff's cervical spine revealed minimal degenerative change at C5-6 and a mild right convex curve, but no fracture or subluxation. Tr. 250. Plaintiff was diagnosed with a thoracic strain and prescribed Tramadol for pain. Tr. 252. On February 13, 2008, Plaintiff was treated for anxiety. Tr. 244-248. She was prescribed Ativan and Haldol. Tr. 245. On March 24, 2008, Plaintiff presented with complaints of headache with nausea and vomiting. Tr. 224-230. Plaintiff's blood sugar level was 345 mg/DL. Tr. 229. She was prescribed Compazine, Ativan, and Benedryl. Tr. 226.

On April 28, 2008, Plaintiff was admitted with complaints of bloody stools, abdominal pain, and vomiting. Tr. 371-395. Abdominal x-rays revealed no localizing pathology. Tr. 362, 394. A CT of Plaintiff's abdomen and pelvis was unremarkable. Tr. 361, 395. A colonoscopy revealed a strong suspicion for colitis with skip lesions. Tr. 372, 375. Biopsy test results were benign. Tr. 393. Dr. Dunaway diagnosed Plaintiff with colitis with strong suspicion of Crohn's disease. Tr. 372. Plaintiff was discharged on May 1, 2008, with a prescription for Flagyl. Tr. 372.

On December 30, 2008, Plaintiff complained of left ear and neck pain after she fell on a step. Tr. 403-411. X-rays of Plaintiff's cervical spine were normal, with no evidence of fracture or subluxation. Tr. 411. Plaintiff was diagnosed with neck strain. Tr. 405, 408.

On January 17, 2009, Plaintiff complained of left knee, back, and neck pain after falling in the bathtub. Tr. 400-402, 412-416. On examination, Plaintiff exhibited mild tenderness and muscle spasms in her upper back and tenderness and limited range of motion in her left knee. Tr. 401. Plaintiff was diagnosed with thoracic and left knee strain and prescribed Flexeril and Tramadol. Tr. 402.

    C. Counseling Associates

On January 15, 2008, Plaintiff presented to Counseling Associates for treatment for depression. Tr. 311-323. Plaintiff reported a history of physical and sexual abuse. Tr. 319. She also reported hearing voices in her head that told her to harm herself. Tr. 317, 322. On examination, Plaintiff appeared depressed, but had a full affect. Tr. 320. Thought processes were logical, and no delusions or hallucinations were noted. Tr. 320. Plaintiff denied suicidal or homicidal ideation. Tr. 322. Judgment and insight were limited. Tr. 321. Plaintiff's intelligence was estimated to be within the average range. Tr. 321. Don Pennington, M.D., diagnosed Plaintiff with mood disorder not otherwise specified ("NOS") and personality disorder NOS. Tr. 311, 322. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 50. Tr. 311, 322.

On February 4, 2008, Plaintiff reported hearing three or four voices inside her head and talking to her deceased father. Tr. 314. Dr. Pennington increased Plaintiff's dosage of Zoloft and added Geodon and Rozerem. Tr. 316. On March 3, 2008, Plaintiff reported poor sleep and crying spells. Tr. 314. She stated that her voices were worse. Tr. 314. She had also stopped taking Geodon and Rozerem. Tr. 314. On examination, Plaintiff was anxious and had a flat affect. Tr. 314. Thought processes were paranoid and Plaintiff reported auditory hallucinations. Tr. 314. Plaintiff's judgment and insight were poor. Tr. 314. Dr. Pennington noted that Plaintiff's condition

had deteriorated, increased her dosage of Zoloft, and prescribed Invega, Risperdal, and Ambien. Tr. 314.

    D. Agency Consultants

In a Physical Residual Functional Capacity ("RFC") Assessment dated April 16, 2008, David L. Hicks, M.D., determined Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty five pounds, stand/walk/sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 326-333. Dr. Hicks found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 328-330.

In a Psychiatric Review Technique Form ("PRTF") dated May 16, 2008, Jerry R. Henderson, Ph.D., determined Plaintiff's symptoms did not meet or equal the criteria of listings 12.04 (affective disorders) and 12.08 (personality disorders). Tr. 343-356. Dr. Henderson found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 353. He determined Plaintiff could perform unskilled work. Tr. 355.

In a Mental RFC Assessment, Dr. Henderson found moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the workplace, and set realistic goals or make plans independently of others. Tr. 357-360. He found that Plaintiff was

not significantly limited in the eleven remaining work-related categories.  Tr. 357-360.

    E.  <u>Terry L. Efird, Ph.D.</u>

On May 15, 2008, Plaintiff saw Terry L. Efird, Ph.D., for a consultative psychological examination.  Tr. 334-339.  Plaintiff reported hearing voices in her head and seeing and talking to her deceased father, mother, and brother.  Tr. 334-335.  She also reported depression, poor sleep/insomnia, lack of energy, feelings of worthlessness and guilt, problems concentrating and making decisions, fear of people, and suicidal ideation with no plan or intent.  Tr. 334.  Plaintiff reported being diagnosed with bipolar disorder and "multiple personalities," although Dr. Efird noted that neither of these diagnoses was present in Plaintiff's records.  Tr. 334.

On examination, Plaintiff was alert and oriented.  Tr. 336.  Plaintiff's mood was dysphoric and her affect was restricted.  Tr. 336.  Thought processes were not always logical and suicidal ideation was noted.  Tr. 336.  Visual and auditory hallucinations were described.  Tr. 336.  Dr. Efird estimated Plaintiff's intelligence to be within the borderline range.  Tr. 337-338.  He noted that Plaintiff's conscious awareness of different personalities speaking to her was atypical.  Tr. 337.  Dr. Efird diagnosed Plaintiff with depressive disorder NOS, moderate to severe, and personality disorder NOS.  Tr. 337.  He estimated Plaintiff's GAF score at 45-55.  Tr. 337.

Plaintiff reportedly performed most activities of daily living autonomously, but had limited social interaction.  Tr. 338.  She completed most tasks within an acceptable time frame, but Dr. Efird noted Plaintiff would have difficulty with complex cognitive tasks.  Tr. 338.  He also noted the possibility of malingering due to Plaintiff's atypical symptoms and her perceived ability to function satisfactorily at her past job at a retirement center.  Tr. 338.

**III.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### IV.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since November 21, 2007, the alleged onset date. Tr. 43. At step two, the ALJ found Plaintiff suffered from diabetes mellitus, COPD, hypertension, back disorder, and mood disorder, all of which were considered severe impairments under the Act. Tr. 43-44. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 44-45.

At step four, the ALJ found Plaintiff had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently and sit/stand/walk for about six hours during an eight-hour workday, but must avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation. Tr. 45-48. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks and could have occasional contact with coworkers and the general public. Tr. 45-48.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 48. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant

numbers in the national economy that Plaintiff could perform.[2]  Accordingly, the ALJ determined Plaintiff was not under a disability from November 21, 2007, the alleged onset date, through October 30, 2009, the date of the decision.  Tr. 49.

**V.    Discussion**

On appeal, Plaintiff contends the ALJ erred by: (1) failing to find several of her impairments to be "severe;" (2) improperly determining her RFC; and (3) posing an improper hypothetical question to the vocational expert.  *See* Pl.'s Br. 9-17.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

The ALJ improperly dismissed Dr. Dunaway's MSS.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013).  In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as eviscerator, of which there are 400 jobs regionally and 5100 jobs nationally, production worker, of which there are 3600 jobs regionally and 300,000 jobs nationally, and maid, of which there are 3000 jobs regionally and 327,000 jobs nationally.  Tr. 48-49.

>Regarding Dr. Dunaway's MSS, the ALJ stated:
>
>The undersigned has considered Dr. Dunaway's opinion, but found it less persuasive in that the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor reported.

Tr. 48.

The court recognizes that the ultimate issue of disability is one reserved to the Commissioner. *See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010). Furthermore, "treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In this instance, however, Dr. Dunaway's assessment is not merely a conclusory medical opinion. Dr. Dunaway treated Plaintiff consistently throughout the relevant time period and completed two detailed MSS forms, in which he offered specific findings to support his conclusion. Tr. 367-369, 417-419, 427-429.

Here, the length of treatment is a testament to Dr. Dunaway's familiarity with Plaintiff's symptoms. Because Dr. Dunaway was the only treating physician to report on Plaintiff's impairments, disregarding his opinion left no medical evidence in the record on the issue. *See DiMasse v. Barnhart*, 88 Fed. Appx. 956, 957 (8th Cir. 2004); *see also Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision).

Furthermore, the court finds that the ALJ did not adequately address the limitations arising from Plaintiff's frequent abdominal complaints. The record is replete with references to Plaintiff's continual abdominal complaints, including frequent abdominal pain, nausea, vomiting, diarrhea, and bloody stools. Tr. 215-216, 296-310, 365, 371-395. Dr. Dunaway diagnosed Plaintiff with colitis

with strong suspicion of Crohn's disease. Tr. 372. Plaintiff was also diagnosed with gastritis, duodenitis, proctitis, and GERD. Tr. 215, 298, 309, 365. Although Plaintiff's abdominal impairments may not be disabling, their frequency and consistency suggest that they would have more than a minimal effect on Plaintiff's ability to work. As noted by the Eighth Circuit, the standard for determining whether a claimant suffers from a severe impairment is a low or *de minimus* standard. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (reversing the decision of the ALJ and holding that a diagnosis of borderline intellectual functioning should be considered severe when that diagnosis is supported by sufficient medical evidence). The medical evidence of record suggests that Plaintiff's chronic abdominal pain had more than a minimal effect on her ability to work. For the aforementioned reasons, the courts finds that substantial evidence does not support the ALJ's determination.

## VI.   Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 27th day of February 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE